# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SHEILA COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 4:16-cv-00830-AGF |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Sheila Coleman was not disabled, and, thus, not entitled under Title II of the Social Security Act ("the Act") to disability insurance benefits, or Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the decision of the Commissioner will be reversed, and the case remanded for an award of benefits.

# BACKGROUND

Plaintiff, who was born on April 13, 1983, protectively filed for disability insurance benefits and SSI on September 18, 2012, alleging a disability onset date of January 1, 2011, (age 28) due, inter alia, to learning disorder, bipolar disorder,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

depression, and post-traumatic stress disorder.  After Plaintiff's application was denied at the initial administrative level, she requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  Such hearing was held on November 20, 2014, at which Plaintiff, represented by counsel, testified, and after which a vocational expert ("VE") submitted vocational opinions by means of written answers to interrogatories.

By decision dated February 12, 2015, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that were available in the national economy, and was therefore not disabled under the Act.  Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on April 12, 2016.  Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ improperly determined, at step three of the sequential evaluation process, that Plaintiff's intellectual disability did not functionally meet or medically equal the deemed-disabling impairment listed in the Commissioner's regulations at 20 CFR Part 404, Subpart P, Appendix 1, Listing 12.05.  Plaintiff also argues that the ALJ improperly evaluated Plaintiff's credibility.

**<u>Medical Record and Hearing Testimony</u>**

The Court adopts Plaintiff's recitation of the facts set forth in her brief, ECF No. 14-1 at 2-9, with the exception of Plaintiff's protected filing date which is accurately represented by Defendant's response as September 18, 2012.  Defendant represents that aside from the protective filing date, she agrees with all other facts as represented by

Plaintiff. These facts present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court will discuss specific facts as they are relevant to the parties' arguments.

**Employment History**

A summary of Plaintiff's FICA earnings from 1998 through 2010, indicates that Plaintiff earned above the substantial gainful activity ("SGA") level in only two years, 2005 and 2010.[2] ECF No. 13-6 at 15. In two other years she had no earnings, and in five other years she earned less than $1,000. *Id.* The consultative examination report, dated November 5, 2007, completed by Lois Mades, Ph.D., states, under employment history designation, "[Plaintiff] has been employed as a restaurant worker and a housekeeper. Her longest period of employment lasted 3 years." ECF No. 13-8 at 28. Another medical consultation, dated March 6, 2012, conducted by Wendy Magnoli, Ph.D., in response to Plaintiff's request for mental health services while at St. Louis County Jail, noted that Plaintiff claimed that her longest term of employment had been with McDonald's from 2003 to 2006, and that she had been a manager at some point, but was fired for closing early.[3] ECF No. 13-15 at 61.

---

[2] The social security administration set the SGA level for 2005 at $9,960 (Plaintiff earned $11,627 in that year) and for 2010 at $12,000 (Plaintiff earned $12,744).

[3] The summary of Plaintiff's FICA earnings shows Plaintiff's yearly earnings to be $0 in 2003, $5,509.55 in 2004, $11,627.82 in 2005, and $7,962.60 in 2006.

**Educational History**

The record shows that Plaintiff's test scores in the 3rd grade on the Missouri Mastery and Achievement Tests, resulted in the following rankings: 1st percentile for social studies/civics, 3rd percentile in mathematics, 2nd percentile in language arts, and 1st percentile rankings in two unidentifiable categories. ECF No. 13-7 at 5. Plaintiff's education enrollment history states, "NOT ATTENDING SCHOOL (DROPOUT UNDER 16)," for three dates while she was in the 9th grade including September 5, 1997, December 11, 1997, and September 16, 1998; "TRANSFER TO SPECIAL ED PROGRAM," on December 16, 1998; and "NON-ATTENDANCE (DROPOUT 16 OR OVER)," on February 25, 1999. *Id.* at 8.

Plaintiff's Report Card for kindergarten through eighth grade, indicates that she repeated 1st grade, and that for ages 11 through 14, she was designated as learning disabled and not in an assigned grade. ECF No. 13-7 at 4. Several medical reports noted that Plaintiff reported she attended special education classes. ECF No. 13-8 at 28, 13-10 at 15, 13-10 at 61, 13-15 at 61. Dr. Magnoli's medical examination report noted that Plaintiff reported that she left school in the 11th grade, but had earned a GED. ECF No. 13-15 at 61.

**ALJ's Decision**

In holding that Plaintiff was not disabled, the ALJ followed the five-step sequential evaluation process established by the Social Security Administration. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff met the insured status

requirement, and had not engaged in SGA since January 1, 2011, the alleged disability onset date.  At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, depression, and post-traumatic stress disorder, as these impairments had been diagnosed by several medical sources and the evidence showed they had more than a minimal harmful effect on Plaintiff's ability to do basic work.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the deemed-disabling impairments listed in the Commissioner's regulations.  Specifically, as relevant here, the ALJ concluded that Plaintiff did not meet or medically equal the criteria of Listing 12.05 (intellectual disability).  To meet the requirements of this listing, a claimant must demonstrate that she suffers from deficits in adaptive functioning that initially manifested during the developmental period (before age 22), and that she meets the requirements of one of the four subsections, A through D, of the listing.  These are separate and independent requirements.  *Ash v. Colvin*, 812 F.3d 686, 690 (8th Cir. 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A).  To meet subsection B, a claimant must have a valid verbal, performance, or full scale IQ of 59 or less.  To meet subsection C, a claimant must have an IQ in the range of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Here, the ALJ stated that Plaintiff had a full scale IQ of 59 (based on the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") test, conducted by Shea Voelker,

Psy.D., on January 26, 2013),[4] which satisfied the subsection B criteria for Listing 12.05, but concluded that Plaintiff failed to establish that she had deficits in adaptive functioning that manifested prior to the age of 22. The ALJ reasoned that aside from Plaintiff's testimony, there were no indications that Plaintiff was enrolled in a special education program, and Plaintiff failed to offer any other evidence to support manifestation prior to age 22.

The ALJ went on to hold that Plaintiff failed to show she was subject to "an ongoing deficit" in adaptive functioning for the following reasons: (1) Plaintiff had maintained employment for a period of three years continuously; (2) even though she lived with her sister and had few responsibilities, if necessary, Plaintiff could cook food in the microwave, make her bed, and she knew how to do laundry even though she did not normally do it; (3) Bridget Graham, Psy. D., noted that Plaintiff had no difficulty interacting socially during her evaluation; and (4) Plaintiff testified that on a typical day, she cleaned up at home, washed dishes, sometimes swept the floor, and would sleep.

At step four of the evaluation process, the ALJ found that Plaintiff had the RFC to perform the full range of work at all exertional levels, but with the following non-exertional limitations: she could understand, remember, and carry out only simple

---

[4] The descriptive classification for relevant intellectual levels below average intelligence according to the WAIS-IV IQ assessment are as follows: 80 to 89 is classified as low average, 70 to 79 is classified as borderline, and 69 and below is classified as extremely low. *See* Contemporary Intellectual Assessment: Theories, Tests, and Issues 215 (Dawn Flanagan & Patti Harrison eds., 3d ed. 2012).

instructions; she could have occasional, not frequent, interaction with supervisors, co-workers, and the public; she could tolerate only occasional change in work location; and she could make only simple, work-related decisions.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible because: (1) there was substantial evidence in the record of illicit drug use during the alleged period of disability; (2) Plaintiff made inconsistent statements to her medical providers regarding her illicit drug use; (3) the record contained evidence of other inconsistent statements, and inconsistent effort by the claimant during her mental exams; (4) the findings of the examining mental health professionals failed to corroborate Plaintiff's allegations of symptoms and limitations that precluded her from performing SGA; and (5) Plaintiff's activities of daily living did not support her allegations of disabling mental health symptoms.

As for the opinions in evidence, the ALJ gave "little weight" to the opinion provided by the Medical Source Statement – Mental, completed by treating physician, Sanjeev Kamat, M.D., dated July 11, 2013; did "not [adopt]" the opinion stated in the Consultative Examination Report, by Dr. Voelker, dated January 26, 2013; and gave "significant weight" to the Mental RFC Assessment, dated February 20, 2013, completed by Ricardo Moreno, Psy.D., based upon a review of records. ECF No. 13-3 at 22-23.

Dr. Kamat indicated that Plaintiff was extremely limited in her ability to understand, remember, and carry out detailed instructions, and respond appropriately to

7

criticism from supervisors; moderately limited in other work related functions, such as the ability to make simple decisions; and not significantly limited in areas such as her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. ECF No. 13-10 at 67-68.[5] The ALJ determined that Dr. Kamat's opinion was against the bulk of the evidence, concluding that the record demonstrated that Plaintiff had an ability to perform activities above the level found by Dr. Kamat.

As noted above, on January 26, 2013, Dr. Voelker administered the WAIS-IV and determined that Plaintiff had a full scale IQ of 59, which placed her in the mild mental retardation range of intellectual functioning. Dr. Voelker also noted that, as for Plaintiff's ability to relate, she was coherent and relevant, but did not provide spontaneous conversation, and maintained poor eye contact. Dr. Voelker noted that Plaintiff was cooperative with the examiner; her stream of speech and mental activity exhibited goal-directed speech, with no tangents or flight of ideas; and that Plaintiff's flow of thought was logical and sequential. In narrative form, Dr. Voelker concluded, inter alia, that Plaintiff's full scale IQ score of 59 was consistent with Plaintiff's reports of having special education classes, although there were no school records to positively confirm such classes. Dr. Voelker observed that Plaintiff appeared to put forth her full

---

[5] The record does not indicate the duration of Dr. Kamat's treating relationship with Plaintiff.

effort in her cognitive examination. Dr. Voelker also stated that Plaintiff appeared to require assistance in managing her own funds.

Without questioning Plaintiff's full scale IQ score of 59, the ALJ found that although Dr. Voelker was an accepted medical source, "her conclusions [were] not generally consistent with the bulk of the evidence in the record and not consistent with her own findings," such as that Plaintiff was coherent and cooperative. ECF No. 13-3 at 24.

Dr. Moreno reported that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods of time, and sustain ordinary routine without special supervision. Dr. Moreno also opined Plaintiff was not significantly limited in her ability to remember very short and simple instructions. ECF No. 13-4 at 25-27. The ALJ afforded Dr. Moreno's report significant weight because the ALJ concluded it was consistent with the bulk of the evidence.

The ALJ also noted the third party statement dated October 22, 2012, provided by Plaintiff's mother. Plaintiff's mother reported that Plaintiff's impairments limited her memory, understanding, concentration, ability to follow instructions, ability to get along with others, and ability to complete tasks. Plaintiff's mother also reported that Plaintiff sometimes had difficulty performing personal care activities such as bathing and grooming. The ALJ concluded that Plaintiff's mother was not an accepted medical

9

source and that her conclusions regarding cognitive function and activities of daily living were not consistent with the bulk of the evidence.

At step five, the ALJ relied on the VE's reply to a Vocational Interrogatory that asked the VE to consider a person with Plaintiff's age, education, work experience, and RFC. The VE concluded that such a person would be unable to perform Plaintiff's past work as a fast food vendor and hair braider. The VE opined that the hypothetical person would be capable of unskilled work as an industrial cleaner, laundry worker, or truck washer. Based on the VE's opinion, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and, therefore, was not disabled.

**Arguments of the Parties**

Plaintiff argues that the ALJ erred in finding no proof of a manifestation of deficits in adaptive functioning before the age of 22. Plaintiff points to the school records that indicate she did not continue school beyond 10th grade, and "Transfer to Special ED Program." Plaintiff also asserts that her 3rd grade state test scores, that show Plaintiff was placed in percentile ranks of 1 to 3, further indicates that she suffered from deficits in adaptive functioning that manifested before age 22. Plaintiff argues that the record establishes that Plaintiff met the criteria of both subsections B and C of Listing 12.05.

In response, Defendant affirms that Plaintiff's full scale IQ is 59 and states, "[t]he issue in the case now before the Court is not the lack of IQ testing, but that the record showed that Plaintiff did not have the required deficits in adaptive functioning." ECF

No. 19 at 7. Defendant argues that the report Plaintiff relies on showing a transfer to special education classes is "without substance" as the same document indicates that Plaintiff either withdrew beforehand or was not attending classes. Furthermore, Defendant argues, there is no evidence that Plaintiff ever attended special education classes even if transferred to the program, nor is there any evidence showing why Plaintiff may have been transferred. And although Plaintiff gave numerous reports to her evaluating doctors that she was placed in special education classes, Dr. Magnoli's report noted that Plaintiff stated she attained a GED certificate.

Plaintiff also argues that the ALJ erred in finding that Plaintiff did not display ongoing deficits in adaptive functioning. Plaintiff contends that her activities of daily living do not support the ALJ's conclusions, pointing to Plaintiff's Functional Report, completed by Plaintiff in connection with her application for SSI benefits, noting her inability to live alone, inability to go out unsupervised, need for help to remember things, and inability to handle money by herself. Plaintiff also points to several medical sources who noted deficits in Plaintiff's functioning: specifically, Dr. Mades's notation that Plaintiff had poor judgment, difficulty with simple calculations, limited hindsight and judgment; and Dr. Graham's notation that Plaintiff was unable to identify past presidents, had poor abstract reasoning, and poor insight and judgment. Additionally, Plaintiff argues that her employment history including reaching SGA levels for only two years out of a 13-year period, working unskilled jobs for short periods of time, and brief periods of

11

self-employment braiding hair, is inconsistent with a finding that Plaintiff lacked deficits in adaptive function.

In response, Defendant relies on Dr. Magnoli's indication that Plaintiff claimed to have worked for three years and that she even worked as a manager in a fast food restaurant for a short term before being fired. Defendant contends that three years of continuous employment and rising to the level of manager shows that Plaintiff did not have the necessary deficits in adaptive functioning. Additionally, Defendant argues that Plaintiff's self-employment as a hair braider, identified as corresponding to a position of semi-skilled work by the VE, is inconsistent with a diagnosis of intellectual disability that meets the 12.05 Listing requirements.

## **DISCUSSION**

### **Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision." *Vance v. Berryhill*, No. 16-1591, 2017 WL 2743089, at *1 (8th Cir. June 27, 2017) (citation omitted). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome." *Johnson*, 628 F.3d at 992 (citation omitted). "Substantial evidence is that which a 'reasonable mind might accept as adequate to

support a conclusion.'" *Id.* (quoting *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010)). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citation omitted). "If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). However, a decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Ordinarily, when a reviewing court concludes that a denial of disability benefits was improper, the court, out of "abundant deference to the ALJ, [should] remand the case for further administrative proceedings." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). Remand with instruction to award benefits is appropriate "only if the record 'overwhelmingly supports' such a finding." *Buckner*, 213 F.3d at 1011 (quoting *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992)).

To be entitled to benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity" which exists in the national economy, by reason of a medically determinable impairment "which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.

If the claimant can perform her past work, the claimant is not disabled. If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When non-exertional limitations significantly affect a claimant's ability to work, an ALJ is required to consult a VE and cannot rely on the Medical-Vocational Guidelines to meet this burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Consideration of Listing 12.05**

As stated above, "[t]o meet the requirements of Listing 12.05, a claimant must demonstrate that she suffers from deficits in adaptive functioning that initially manifested during the developmental period. The claimant also must meet the requirements of one of the four subsections lettered A through D. These are separate and independent requirements." *Ash*, 812 F.3d at 690. Here, as noted above, at step three, the ALJ stated that Plaintiff had a full scale IQ of 59, which meets the criteria of Listing 12.05B, and Defendant, in her brief before the Court, affirms that this is indeed Plaintiff's IQ. Therefore, as stated by Defendant, the issue before the Court is whether the ALJ properly concluded that Plaintiff failed to establish that she had the necessary deficits in adaptive functioning that manifested before age 22.

The Commissioner's regulations refer to adaptive function as "how you learn and use conceptual, social, and practical skills in dealing with common life demands." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(H)(3)(a). Evidence for adaptive functioning may be taken from a variety of sources including medical sources, standardized tests of adaptive functioning, third party information such as a report from a family member or friend, school records, reports from employers or supervisors, and an applicant's own statements concerning how he or she handles all daily activities. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(H)(3)(b)

Upon review of the entire record, the Court finds that the record does not support the ALJ's conclusion that Plaintiff did not demonstrate deficits in adaptive functioning that manifested prior to age 22. The ALJ's reading of the record as having no indication

15

that Plaintiff was in special education is particularly problematic in light of Plaintiff's school enrollment record, described above, that documented a transfer to special education and that she dropped out of school in the 10th grade, and Plaintiff's report card that indicated a learning disabled designation from ages 11 to 14. At the very least, this would warrant a remand for reconsideration. *See Bryant v. Berryhill*, No. 7:16-CV-36-D, 2017 WL 914645, at *4 (E.D.N.C. Feb. 17, 2017) (recommending remand for Listing 12.05 reconsideration in part because the ALJ's statement that "there was no indication from school records that she received special education services" was based on a meager five page record, and because the evidence that the plaintiff tested in the fifteenth and ninth percentile ranks, and the records indicating freshman status at about age 18, were actually consistent with the possibility of receiving special education services), *R. & R. adopted*, No. 7:16-CV-36-D, 2017 WL 908190 (E.D.N.C. Mar. 7, 2017). However, the Court finds that remand for reconsideration is unnecessary in light of the evidence in the record that affirmatively establishes Plaintiff suffered from ongoing deficits of adaptive functioning, and that such deficits manifested before age 22.

The Eighth Circuit has held that rigid proof of the onset of impairment before age 22 is not necessary; rather the regulations "permit [courts] to use judgment, based on current evidence, to infer when the impairment began." *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (citation omitted) (reversing with an award of benefits and holding that the ALJ should have found that adaptive functioning deficits manifested before age 22 from evidence of struggling in special education classes, dropping out of

school, a verbal IQ of 70, and frequent fights with other children); s*ee also Reed v. Colvin*, 779 F.3d 725, 727 (8th Cir. 2015) (finding early onset of Listing 12.05 impairment was shown by a history of attending special education classes, repeating of grades, noted problems with math and reading, and quitting school in 11th grade); *cf. Ash*, 812 F.3d at 691-92 (affirming that a claimant did not meet the deficits in adaptive functioning requirement of Listing 12.05 when the plaintiff was capable of driving unfamiliar routes, shopping independently, managing her own finances, completing basic household chores, had a ten-year work history, and was found by an evaluating doctor to be adaptively functional).

Here, Plaintiff's third grade Missouri state test scores placing her in the 1st percentile for social studies, 2nd percentile for language arts and 3rd percentile for mathematics, plus the fact that she repeated 1st grade, indicate early and severe difficulties in school. Additionally, Plaintiff's school records indicate her educational difficulties continued throughout the developmental period as her report card indicated a learning disability designation, non-attendance issues, a transfer to special education, and dropping out in 10th grade.

The ALJ's reliance on Plaintiff's employment history is also problematic. The ALJ stated that Plaintiff had been employed for three continuous years, citing to a notation in a medical examination report. However, as noted above, the summary of Plaintiff's FICA earnings show that from 1998 to 2010, Plaintiff only achieved earnings above SGA levels twice, in non-consecutive years, 2005 and 2010. Similarly,

Defendant's argument, that Plaintiff's self-employment as a hair braider supports the ALJ's finding, is unpersuasive. There is no indication of how regularly, if at all, Plaintiff actually had clients; nor was there any evidence that Plaintiff's actual job responsibilities represented even semi-skilled work. *See Douglas v. Astrue*, 341 F. App'x 257, 259 (8th Cir. 2009) (noting that an ALJ's classification of a plaintiff's job as semi-skilled work was not appropriate to deny benefits because it failed to take into account the actual skill and abilities required to perform the plaintiff's specific duties for that job).

Similarly, Plaintiff's daily activities relied on by the ALJ do not support a finding that Plaintiff lacked deficits in adaptive functioning. Plaintiff's ability to microwave T.V. dinners, make her bed, do laundry, tidy up at home, wash dishes, sweep, or sleep, do not, as the ALJ claimed, support the conclusion that Plaintiff lacked deficits in adaptive functioning. In fact, the Commissioner's regulation that addresses how everyday activities should be considered specifically states, "[t]he fact that you engage in common everyday activities, such as caring for your personal needs, preparing simple meals, or driving a car, will not always mean that you do not have deficits in adaptive functioning as required by 12.05B2." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00H(3)(d). The regulations insist, "conclusions about your adaptive functioning rest on whether you do your daily activities independently, appropriately, effectively, and on a sustained basis…. We will not assume that your ability to do some common everyday activities … demonstrates that your mental disorder does not meet the requirements." *Id. See also, Douglas,* 341 F. App'x at 259 (finding evidence that the plaintiff drove, shopped, did

household chores, prepared light meals, and was independent in all areas of personal care was not sufficient to undermine deficits in adaptive functioning considering the plaintiff had an IQ of 63, could not pay bills, use a checkbook, count change, do banking, or go to the post office). Here, as noted above, Plaintiff testified that she did not live independently, she could not drive, and while she was capable of some self-personal care, her mother reported that Plaintiff needed reminders to take medications and do chores, that Plaintiff could not go out unsupervised, and that Plaintiff could not manage money.

While the ALJ determined that Plaintiff's mother's statement was inconsistent with the bulk of the evidence in the record, this determination is not actually supported by the record. Nothing in the record contradicts the mother's descriptions that Plaintiff could not go out alone because she gets lost, could not drive, struggled remembering tasks, could not pay bills or use a checkbook, and did not follow instructions or adapt to changes in routine well. The ALJ's decision to disregard the Plaintiff's mother's statement because she was not an accepted medical source is contrary to the Commissioner's regulations that explicitly state that third-party, non-medical sources can provide information about "any symptom-related functional limitations and restrictions." 20 C.F.R. § 404.1529(c)(3); *see also Jones v. Colvin*, No. C 14-3049-MWB, 2016 WL 915236, at *8 (N.D. Iowa Mar. 7, 2016) ( stating "lack of medical training is not a good reason to discount third-party function reports . . . because doing so ignores the purpose of third-party function reports").

The Court holds that the record as a whole establishes that Plaintiff had deficits in adaptive functioning that manifested prior to age 22. Furthermore, as the ALJ and Defendant acknowledged, Plaintiff has a full scale IQ of 59, which satisfies the subsection B requirement of Listing 12.05. Therefore, Plaintiff has met both requirements of Listing 12.05. When a plaintiff "wins at the third step (a listed impairment), she must be held disabled, and the case is over." *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003). This case is reversed and remanded for an award of benefits.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED and the case is REMANDED for an award of benefits**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of September, 2017.